■ In the Matter of ALAN J. KIRSCH, Petitioner, v BOARD OF REGENTS OF THE UNIVERSITY OF THE STATE OF NEW YORK et al., Respondents.— Proceeding pursuant to CPLR article 78 (initiated in this court pursuant to subdivision 4 of section 6510 of the Education Law) to review a determination of the Commissioner of Education which revoked petition-

er's license to practice medicine. Petitioner was a psychiatrist licensed to practice in the State of New York when, on November 17, 1978, an investigator for the Department of Education petitioned the Committee on Professional Conduct of the State Board of Medicine for the revocation of petitioner's license to practice medicine. Alleged as grounds for the revocation were three specifications, the first of which charged petitioner with being guilty of misconduct under section 6509 (subd [5], par [a]) of the Education Law in that he had been convicted of the crimes of grand larceny in the third degree and offering a false instrument for filing in the first degree, both of these felonies arising out of his overbilling the Division of Medical Payments of the New York City Department of Social Services in an amount exceeding $1,000. The second specification charged him with misconduct under subdivision (3) of section 6509 in that during 1974 and 1975 he allegedly practiced medicine while his ability to do so was impaired by mental disability. The final specification charged petitioner with misconduct generally under subdivision (9) of section 6509 and incorporated by reference the first two specifications. Following hearings before a panel of the Committee on Professional Conduct of the State Board of Medicine on February 21, 1979 and March 14, 1979, the panel found petitioner guilty of all three specifications and recommended revocation of his license. Thereafter, the Regents Review Committee accepted the findings, determination and recommendation of the panel except that it found petitioner not guilty of the third specification insofar as it related to the second. Ultimately, the Board of Regents adopted the committee's report in full, and as a consequence, petitioner's license to practice medicine was revoked in an order signed by the Commissioner of Education on December 10, 1979. This proceeding followed. Initially, we conclude that the board's findings as to the three specifications should not be disturbed. Petitioner was admittedly convicted following a trial of acts constituting crimes under New York State law, and consequently, he could properly be found guilty of misconduct under the first specification (see Education Law, § 6509, subd [5], par [a]) even though an appeal of the judgment of conviction was pending (see CPL 1.20, subd 13; *Matter of Gunning v Codd,* 49 NY2d 495). Similarly, there was sufficient testimony and other evidence relative to petitioner's conduct and actions during the years 1974 and 1975 so as to adequately support the board's findings that petitioner was also guilty under the second specification relating to mental disability *(Matter of Pell v Board of Educ.,* 34 NY2d 222). As for the final specification, it merely reiterates the charges embodied in the first two specifications which, as noted, are amply supported in the record. Accordingly, any purported defect in this last specification is plainly harmless (cf. *Matter of Erdman v Board of Regents,* 24 AD2d 698, mot for lv to app den 17 NY2d 421). Such being the case, we must now consider the propriety of the sanction imposed upon petitioner, and in so doing, we conclude that it should be sustained. The petitioner contends that the board revoked his license relying principally upon the hearing panel's finding that he was mentally disabled at the time of his hearings in February and March of 1979. He concludes, therefore, that inasmuch as his mental condition in 1979 is nowhere mentioned in any of the specifications made against him, he was found guilty of an uncharged specification and was denied sufficient opportunity to prepare and present a defense. While the board

admittedly considered petitioner's mental state as reflected by his testimony and demeanor at the hearing, this did not constitute a finding that petitioner was guilty of an uncharged specification. In determining the measure of discipline to be imposed upon the petitioner, consideration of his mental state at the time of the hearings by both the panel and the board was necessary so that the board could discharge its obligation by appropriately disciplining the petitioner while at the same time protecting the general public from being treated by a disabled practitioner. In our judgment, these procedures were entirely proper and violated none of petitioner's rights, and it is clear that petitioner was not found guilty of any charges not contained in the specifications against him (see Matter of Murray v Murphy, 24 NY2d 150). Lastly, we note that the hearing panel did not violate subdivision 1 of section 307 of the State Administrative Procedure Act by failing to rule specifically on each finding of a counterreport proposed by petitioner. The counterreport was submitted at the invitation of the Attorney-General's office and not in accordance with any rules of the Department of Education, and as a consequence, the cited statute is by its own wording rendered in applicable thereto. Furthermore, the hearing panel's findings, determination and recommendation were full and complete and in no way prejudiced petitioner. Determination confirmed, and petition dismissed, without costs. Mahoney, P. J., Greenblott, Main, Mikoll and Herlihy, JJ., concur.